UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-12292-RWZ

IRONSHORE SPECIALTY INSURANCE COMPANY

v.

UNITED STATES OF AMERICA
and AMERICAN OVERSEAS MARINE COMPANY, LLC

MEMORANDUM OF DECISION

April 19, 2016

ZOBEL, J.

In July 2014, the United States Naval Ship *Fisher* ("the *Fisher*") spilled more than eleven thousand gallons of diesel fuel into Boston Harbor while in the graving dock of Northeast Ship Repair (d/b/a Boston Ship Repair) ("BSR"). BSR contacted the appropriate regulatory authorities and assumed several million dollars in cleanup and restoration costs, of which its insurer, Ironshore Specialty Insurance Company ("Ironshore") has reimbursed roughly $2.7 million. Ironshore has sued the United States and American Overseas Marine Company, LLC ("AmSea") to recover that amount on two theories: that the Oil Pollution Act of 1990 holds them strictly responsible for the spill, and that they are liable under maritime law for negligence.

At the time of the spill, the United States—the *Fisher*'s undisputed owner—had entered into a contract with AmSea under which AmSea provided "personnel, operational, and technical support ashore and afloat" the ship. Pursuant to that contract,

1

the United States had tendered the *Fisher* to AmSea for maintenance and repairs, and AmSea had delivered the ship to BSR's graving dock for that purpose. The contract specified that the United States retained total "operational control" over the vessel at all times.

Both defendants have filed motions to dismiss. AmSea's motion is allowed, and all other pending motions are denied as moot.

**I.     Standard**

Complaints must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts assume the truth of all of a complaint's factual allegations, but not of its legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint will be dismissed if it fails to state a plausible claim upon which relief can be granted. Id.

**II.    Discussion**

Both the United States and AmSea have moved to dismiss (respectively Docket ## 31 and 29). Because AmSea's motion addresses all counts of this complaint as they pertain to all defendants, and because its motion is allowed, the court needs not and does not address any additional substantive motions (Docket ## 16, 40).

**A.     Oil Pollution Act of 1990**

Counts One and Three of the complaint seek relief under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 et seq. (2012) (hereinafter "OPA"). OPA, enacted shortly after the Exxon Valdez incident, provides a comprehensive scheme for addressing oil spills in the navigable waters[1] of the United States. OPA categorically exempts from its

---

[1] Graving docks, while technically on land, are navigable waters for present purposes. See, e.g., The Robert W. Parsons, 191 U.S. 17, 33–34 (1903).

coverage any "public vessel," 33 U.S.C. § 2702(c)(2), and likewise excludes owners and operators of "a public vessel" from liability as "responsible part[ies]," id. §§ 2701(32), 2701(37). Under OPA's definitional provisions, a public vessel "means a vessel owned . . . and operated by the United States." Id. § 2701(29). A litany of precedent construing similar language in analogous statutory schemes—both the Public Vessels and Suits in Admiralty Acts—confirms that vessels under the operational control of the United States are public vessels even when the United States has contractually delegated operations to a private party. See, e.g., Smith v. MAR, Inc., 877 F. Supp. 62, 65 (D.R.I. 1995) ("We think government ownership and use as directed by the government exclusively for a public purpose suffice without more to make a ship a public vessel."); River & Offshore Servs. Co. v. United States, 651 F. Supp. 276, 277 (E.D. La. 1987).

The facts pleaded, and documents referred to in the complaint,[2] make plain that the *Fisher* is a public vessel and is thus exempt from OPA's coverage. The United States unquestionably owns the *Fisher*, and the agreement between AmSea and the United States unambiguously vests operational control thereof entirely with the United States. AmSea, unable to exercise its own judgment and discretion over the *Fisher*'s operation, is thus an agent of the United States, "subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf." Petition of United States, 367 F.2d 505, 509 (3d Cir. 1966) ("As a matter of legal definition, "agent" of the United States is an appropriate characterization of . . . a contract operator of a [Naval] vessel . . . ."). Plaintiffs have not offered—nor can the court discern—any compelling reason to depart from this shared understanding of

---

[2] The court may consider such documents at the motion to dismiss stage. See Alternative Energy, Inc., v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

"public vessel" in analogous statutory schemes. This court joins the consensus and holds that "government ownership and use as directed by the government exclusively for a public purpose suffice . . . to make a ship a public vessel," Smith, 877 F. Supp. at 65, under OPA.

## B. Maritime Negligence

Count Two of Ironshore's complaint alleges negligence against AmSea and the United States under the general maritime law.[3] OPA, however "supplant[s] the existing general admiralty and maritime law" concerning oil spills. S. Port Marine LLC v. Gulf Oil Ltd. P'ship, 234 F.3d 58 (1st Cir. 2000). Ironshore thus may not sustain its maritime negligence claim here.

## III. Conclusion

AmSea's Motion to Dismiss (Docket # 29) and the United States' Motion to Dismiss (Docket # 31) are ALLOWED. Ironshore's Motion to Dismiss (Docket # 16), BSR's Motion to Intervene (Docket # 40), AmSea's Motion to Compel (Docket # 59), and AmSea's Motion for Extension of Time (Docket # 61) are all DENIED AS MOOT. Judgment may be entered for the United States and for AmSea.



| April 19, 2016 | Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |

---

[3] In its response to AmSea's Motion to Dismiss, Ironshore classifies its negligence claim as one of Massachusetts, not maritime, law. This position contradicts Ironshore's own complaint and is therefore untenable. In that complaint, Ironshore states unambiguously that "this action is an admiralty action and maritime claim" that falls within the admiralty jurisdiction of the federal courts. Because Ironshore's Oil Pollution Act claims arise under a federal statute and have a freestanding jurisdictional anchor, see 28 U.S.C. § 1331 (2012), the only claim to which "maritime" could possibly refer is its negligence claim.